UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RENE J. HERMIZ, | No. ED CV 05-546 PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on June 29, 2005, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on August 16, 2005. Pursuant to the Court's order, the parties filed a Joint Stipulation on February 23, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on September 27, 1963. [Administrative Record ("AR") at 30, 107, 405.] He completed the seventh grade and has worked as a handyman, construction worker, and solar energy system installer. [AR at 49, 51, 122, 137, 384, 453.]

Plaintiff filed an application for Supplemental Security Income payments on May 7, 2001. [AR at 107-09.] He alleged he has been unable to work since February 1, 2001, due to fatigue, an inability to concentrate, muscle cramps, and overall body pain. [AR at 107, 111, 116-17.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") after his initial application was denied. The ALJ held a hearing on May 20, 2003, at which plaintiff appeared with counsel and testified on his own behalf. A medical expert and a vocational expert also testified. [AR at 28-66.] On June 23, 2003, the ALJ determined that plaintiff was not disabled because he could perform a significant range of medium work activities.[1] [AR at 9, 12-20.] The Appeals Council denied review on August 8, 2003. [AR at 5-7, 8.]

Plaintiff then commenced a civil action. [AR at 345-49.] Based on a stipulation between the parties, this Court issued an order on March 4, 2004, remanding the case to the Commissioner.[2] Id. The Court ordered the ALJ to consider and weigh the treating physician's opinion and also offered plaintiff the opportunity to present additional testimony and evidence. Id. The ALJ held a second hearing on January 27, 2005, and plaintiff again appeared with counsel and testified. [AR at 400, 402-59.] Two medical experts and a vocational expert also testified. Id. On March 18, 2005, the ALJ determined that plaintiff was not disabled because he could perform a significant range of medium work. [AR at 273-81.]

/

/

---

[1] Medium work involves lifting up to fifty pounds at a time, with frequent lifting or carrying of objects weighing up to twenty-five pounds. 20 C.F.R. §§ 404.1567(c), 416.967(c).

[2] Page 2 of the remand order is missing from the Administrative Record.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.  THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in any substantial gainful activity; if so, the

3

claimant is not disabled and the claim is denied. Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of non-disability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id.  The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP EVALUATION PROCESS**

The ALJ applied the five-step process and concluded that plaintiff is not disabled.  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. [AR at 274.]  At step two, the ALJ determined that plaintiff has the following severe impairments: "hepatitis B virus, chronic cervical muscle strain, reactive depression secondary to pain, and somatoform disorder not otherwise specified." Id. At step three, the ALJ found that plaintiff's impairments do not meet or equal the requirements of any of the impairments in the Listings. Id. The ALJ further determined that plaintiff retains the residual functional

capacity[3] to perform a significant range of medium work activities.[4] [AR at 274, 280.] At step four, the ALJ determined that plaintiff is unable to perform any of his past relevant work. [AR at 280.] At step five, the ALJ concluded that plaintiff can perform jobs that exist in significant numbers in the national economy. Id. Accordingly, the ALJ found plaintiff not disabled. Id.

## V.

## THE ALJ'S DECISION

Plaintiff argues that the ALJ: (1) failed to properly consider the treating physician's opinion of disability; and (2) failed to properly assess plaintiff's credibility. Joint Stipulation ("Joint Stip.") at 3. The Court respectfully disagrees with plaintiff and affirms the ALJ's decision.

### A.   TREATING PHYSICIAN'S OPINION

Plaintiff contends that the ALJ erred in giving no weight to the opinion of disability of Dr. Robert E. Erwin, the treating physician. Joint Stip. at 3. The Ninth Circuit distinguishes among three types of physicians when evaluating medical opinions: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; Lester, 81 F.3d at 830. As a general rule, the ALJ should give more weight to the treating physician's opinion than to the opinions of doctors who do not treat the plaintiff. Lester, 81 F.3d at 830; see also Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) ("Because treating physicians are employed to cure and thus have a greater opportunity

---

[3]   Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[4]   The ALJ determined that plaintiff: (1) can stand and/or walk for six hours, and sit for eight hours, out of an eight hour day; and (2) "is precluded from work requiring safety operations and . . . from work requiring intense interpersonal contact with co-workers, supervisors, or the public." [AR at 274.]

1 | to know and observe the patient as an individual, their opinions are given greater weight than the
2 | opinions of other physicians.").

3 | But the ALJ need not give controlling weight to the treating physician's opinion. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194-95 (9th Cir. 2004). "The treating physician's opinion is not ... necessarily conclusive as to ... the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted). For example, the ALJ does not have to accept a treating physician's opinion that is brief, conclusory, or unsupported by clinical findings, especially when the opinion is in the form of a check-off report. Id.

"The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Batson, 359 F.3d at 1195 (quoting Magallanes, 881 F.2d at 751). Where the record contains conflicting medical evidence, the ALJ must determine credibility and resolve the conflict. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). When another examining source's opinion contradicts the treating source's opinion, the ALJ may reject the treating source's opinion with specific and legitimate reasons based on substantial evidence in the record. Smolen, 80 F.3d at 1285.

Plaintiff saw Dr. Robert E. Erwin, the treating physician, from June 7, 2002, to October 15, 2002. [AR at 236-40.] Dr. Erwin checked off in his medical report dated August 22, 2002, that plaintiff was disabled due to osteoarthritis and depression. [AR at 245.] Dr. Erwin opined that plaintiff's incapacity began in March 2000 and would end on February 21, 2003. Id.

The ALJ rejected Dr. Erwin's opinion of disability, finding it totally unreliable and giving it no weight. [AR at 274.] Instead, the ALJ relied on other medical opinions indicating that plaintiff either had no disability or had a milder disability than Dr. Erwin stated. For example, the ALJ gave significant weight to the opinion of Dr. Concepcion A. Enriquez, the consultative medical examiner. [AR at 195-99, 276.] Dr. Enriquez found that plaintiff had normal range of motion in his upper and lower limbs, and that his musculoskeletal and neurological examinations were also normal. [AR at 198.] Although Dr. Enriquez noted that plaintiff presented with a history of chronic fatigue syndrome and chest pain, and bright red blood per rectum, there were no signs on examination of upper respiratory tract infection, his chest pain was atypical for angina, there were

no signs of anemia, and blood tests were within normal limits. [AR at 199.] Dr. Enriquez concluded that plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently as well as stand and/or walk, and sit, for six hours out of an eight-hour work day. Id.

The ALJ also gave significant weight to Dr. Ernest Bagner, III, the consultative psychiatric examiner. [AR at 200-03, 276.] Based on his examination of plaintiff, Dr. Bagner opined that plaintiff's mental status was intact. [AR at 203.] Dr. Bagner elaborated that plaintiff could: (1) interact appropriately with a supervisor; (2) carry out simple three-part commands and repetitive tasks; (3) handle a moderate degree of stress; and (4) work with peers and the public and attend work on a regular basis. Id.

In addition, the ALJ relied on the opinion of Dr. Sami Nafoosi, a testifying medical expert. [AR at 277.] Dr. Nafoosi affirmed Dr. Enriquez's findings that plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently. [AR at 423.] Dr. Nafoosi testified that plaintiff could sit for eight hours in an eight hour day, and stand or walk for six hours in an eight hour day. Id.

The ALJ also gave weight to the opinion of Dr. Joseph Malancharuvil, another testifying medical expert. [AR at 277.] Dr. Malancharuvil testified that plaintiff has "mixed personality problems." [AR at 417.] However, Dr. Malancharuvil found: (1) no limitations on plaintiff's activities of daily living and no decompensation; and (2) only mild limitations on plaintiff's social functioning, as well as on his concentration, persistence and pace. [AR at 417-18.] Dr. Malancharuvil also remarked that plaintiff would "yield" to a supervisor. [AR at 420-21.]

Furthermore, the ALJ referenced the records of Dr. Alan B. Compton, a treating psychologist. He noted that on November 15, 2002, plaintiff reported that Paxil and Wellbutrin were at least partially successful in treating his depression. [AR at 247.] On April 4, 2003, Dr. Compton noted that plaintiff showed no change in his mental health condition despite being out of antidepressant medication for about three months. [AR at 390.]

Here, the ALJ provided specific and legitimate reasons, supported by the record, for giving no weight to Dr. Erwin's opinion. First, the ALJ properly rejected Dr. Erwin's opinion because despite the doctor's conclusion on August 22, 2002, that plaintiff suffered from osteoarthritis, none

of the underlying treatment records document that particular diagnosis. [AR at 274.] See Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (holding that the ALJ properly rejected the treating physician's statement as unsupported by the treatment reports); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (the ALJ permissibly rejected the treating physician's opinion that was contradicted by treatment reports). Rather, Dr. Erwin's records show he treated plaintiff for hemorrhoids, bilateral hand blisters, bilateral feet cramps, foot fungus, and fatigue. [AR at 235-40.] Moreover, nothing in the record shows that Dr. Erwin prescribed a course of treatment consistent with a finding of osteoarthritis. See Rollins, 261 F.3d at 856 (the treating physician's opinion was properly rejected because the conservative course of treatment did not show plaintiff was totally disabled). Dr. Erwin encouraged plaintiff to diet and exercise, prescribed medication for foot fungus, and gave Elavil for his insomnia.[5] [AR at 236-40, 390.]

The ALJ further found that Dr. Erwin based his assessment of disability on subjective complaints rather than objective facts. [AR at 274.] As seen above, Dr. Erwin's treatment notes do not include any objective medical evidence of osteoarthritis. See Batson, 359 F.3d at 1195 (9th Cir. 2004) (finding that the ALJ properly rejected the treating physician's opinion based on subjective complaints because the treatment notes failed to show objective medical evidence supporting the assertions in the report); Tonapetyan v. Halter, 242 F.3d 1144, 1149-50 (9th Cir. 2001) (the ALJ correctly rejected the treating physician's opinion for lack of objective evidence because the doctor relied on subjective complaints of the plaintiff whose credibility the ALJ properly discounted); Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989) (the ALJ correctly disregarded the treating physician's opinion premised on plaintiff's subjective complaints that the

---

[5] The Court notes that Dr. John J. Magrann, a treating physician, saw plaintiff seven times from 1996 to 2001, and did not note any history of osteoarthritis. [AR at 150-57.] Moreover, Dr. Magrann found plaintiff disabled for only "6 months," as opposed to Dr. Erwin's finding of almost three years. [AR at 151, 245.] Dr. Samuel Wilson, another treating physician, saw plaintiff three times from April 24, 2003, to January 13, 2004. [AR at 392, 395, 397.] Dr. Wilson's impression on January 13, 2004, was that plaintiff had osteoarthritis and depression. [AR at 392.] Plaintiff also complained of joint pain. Id. But plaintiff's physical examination was normal: it revealed no clubbing, joint line tenderness, or point tenderness. Id. These reports, given limited probative weight by the ALJ, do little if anything to support Dr. Erwin's findings. [AR at 276.]

1  ALJ properly discounted).⁶  But see Reddick v. Chater, 157 F.3d 715, 725-26 (9th Cir. 1998)
2  (concluding that the ALJ improperly rejected the treating physicians' opinions as being based on
3  subjective complaints, because the illness at issue -- chronic fatigue syndrome -- could only be
4  explained through self-report).  The Court notes that Dr. Erwin did not send plaintiff for x-rays, or
5  for orthopedic or rheumatological consultations.  [AR at 236-40, 424.]  While prior to Dr. Erwin's
6  treatment, x-rays of plaintiff's spine and shoulders were taken on August 2, 2001 [AR at 167], they
7  revealed only a straightening of plaintiff's cervical lordosis; otherwise, the x-rays showed that
8  plaintiff's cervical spine and shoulders were normal.  Id.  As such, the reasons provided by the
9  ALJ to reject Dr. Erwin's opinion were sound, and remand is not warranted.⁷

**B.   PLAINTIFF'S CREDIBILITY**

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's pain testimony, as the record clearly shows his diagnosis of osteoarthritis and chronic

---

⁶   See infra, at 9-13 (finding that the ALJ here properly discounted plaintiff's credibility).

⁷   The ALJ also disregards the opinion of Dr. Erwin and questions his integrity based on his belief that Dr. Erwin's statements "reflect more interest in patient advocacy rather than medical practice."  [AR at 274.]  The Court rejects this conclusion as a proper ground in these circumstances.  See Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) (holding that the ALJ cannot discount a treating physician's opinion only because the ALJ believes the doctor might "lean over backwards" to help the plaintiff).  Here, the ALJ questioned Dr. Erwin's integrity because Dr. Erwin found plaintiff disabled for a period of almost three years after only three visits over a two and one-half month period.  [AR at 274.]  But see Ghokassian v. Shalala, 41 F.3d 1300, 1303 (9th Cir. 1994) (holding that the ALJ improperly discounted a treating physician's opinion based on two visits over fourteen months); Bayersdorfer v. Sec'y of Health & Human Servs., 578 F. Supp. 131, 135 (S.D.N.Y. 1983) (noting that a treating physician can opine that plaintiff was disabled at present and in the foreseeable future).  The record contains no other evidence -- other than the ALJ's inference -- to support the ALJ's allegations about Dr. Erwin's integrity or interest in patient advocacy.  See Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 602 (9th Cir. 1984) (noting that the record contained no evidence to support the government's allegations that the treating psychiatrists "simply manufacture 'diagnoses'" of disability).  The record also fails to support a claim that Dr. Erwin agreed to become an advocate and assist plaintiff in petitioning for Social Security benefits.  Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992) (finding that the ALJ properly gave less weight to a treating physician who helped plaintiff petition for benefits).  The Court finds, however, that the ALJ's comments in this regard are harmless, as the ALJ's other reasons were specific and legitimate for rejecting Dr. Erwin's opinion.

pain syndrome. Joint Stip. at 10-11. Accordingly, plaintiff reasons that the ALJ did not properly reject plaintiff's credibility.

The Ninth Circuit allows the ALJ to reject a plaintiff's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton, 331 F.3d at 1040. The ALJ may consider the following factors when assessing a plaintiff's credibility: (1) his reputation for truthfulness; (2) inconsistencies in his testimony or between his testimony and conduct; (3) his daily activities; (4) his work record; and (5) testimony from physicians and third parties concerning plaintiff's complaints about the nature, severity, and effect of plaintiff's symptoms. Thomas, 278 F.3d at 958-59. The ALJ must state which testimony is not credible and identify the evidence that undermines the plaintiff's complaints. Reddick, 157 F.3d at 722; Benton, 331 F.3d at 1041. "General findings are insufficient." Reddick, 157 F.3d at 722. The Ninth Circuit gives great deference to the ALJ's credibility determination if properly supported. Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

Here, the ALJ's reasons for rejecting plaintiff's credibility needed to be clear and convincing because the record shows no evidence of malingering. Benton, 331 F.3d at 1040. The Court concludes that the ALJ's rejection was proper as based on reasons that meet the "clear and convincing" standard.

First, the ALJ properly noted that plaintiff's medical treatment has been routine and conservative. [AR at 278.] See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (noting that the treating physician prescribed "conservative treatment" that suggests a lower level of pain). The ALJ accurately stated that the record generally reflects the occasional consumption of mild analgesics and the use of Wellbutrin. [AR at 236-40, 278, 387-90.] Indeed, at the second hearing, plaintiff testified that he was not taking any medication currently, and was going to resume taking only Wellbutrin after not taking it for a year. [AR at 414-15.] Furthermore, Dr. Compton reported that "the medication [made] a big difference" and plaintiff's "spirits seem good" on March 21, 2002. [AR at 173.]

Next, the ALJ properly determined that plaintiff's activities are inconsistent with any debilitating condition. [AR at 279.] The record reflects that plaintiff dressed and bathed himself,

1  completed chores, ran errands, shopped, and cooked despite his allegations of disability. [AR at
2  126-27, 131-34, 202, 431-32 (third party daily activities questionnaire, plaintiff's daily activities
3  questionnaire, Dr. Bagner's report, and plaintiff's testimony).]  See Thomas, 278 F.3d at 959
4  (discounting a plaintiff's testimony because she could perform household chores such as cooking,
5  laundry, washing dishes, and shopping); Rollins, 261 F.3d at 857 (rejecting a plaintiff's claim about
6  disabling pain because she could attend to two children, cook, housekeep, do laundry, and shop).
7  Further, plaintiff was able to drive himself to an appointment with Dr. Bagner on October 11, 2001.
8  [AR at 200.]  See Thomas, 278 F.3d at 953 (observing that a non-disabled plaintiff drove herself
9  to the hearing).  Plaintiff reported "increased physical activity including daily walks" on March 21,
10 2002. [AR at 257.]  Indeed, on May 7, 2002, plaintiff stated he felt more "energized" and walked
11 "a mile a day." [AR at 171.]  Plaintiff also was able to support two children and care for his pets.
12 [AR at 134, 279, 432, 443-44.]  The record indicates that plaintiff attended school for at least one
13 and one-half months, and stopped because he felt he was not learning anything useful, not
14 because of an inability to attend based on disability.  [See AR at 395, 397, 455.][8]

15       The ALJ also properly used plaintiff's failure to seek treatment and follow a prescribed
16 course of treatment as evidence to reject plaintiff's allegations.  [AR at 278.]  See Orteza v.
17 Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (per curiam) (discrediting plaintiff's complaints of pain
18 because of his unexplained absence of treatment for excessive pain); Fair, 885 F.2d at 603 ("[A]n
19 unexplained [failure] to seek treatment or follow a prescribed course of treatment...can cast doubt
20 on the sincerity of the claimant's pain testimony.").  The ALJ accurately stated that plaintiff missed
21 many medical appointments.  [AR at 278.]  For example, the record shows that plaintiff saw Dr.
22 Compton twelve times over one and one-half years, but failed to appear at nine appointments.
23 [AR at 170-80, 246-53, 387-90.] While plaintiff explained that he missed his September 19, 2002,
24 appointment because of "no money or ride" [AR at 249], the record shows plaintiff clearly can
25 meet other engagements: (1) his relative provided a ride on March 21, 2002; (2) plaintiff is able

---

28     [8] While plaintiff testified that he attended college for "two weeks" [AR at 455], the medical reports indicate that plaintiff wanted a doctor's note for school in both April and June, 2003.

to drive himself; and (3) plaintiff was able to attend school until he decided to stop going for reasons unrelated to an inability to attend. [AR at 133, 173, 200, 395, 397, 455.]

The record also shows both that plaintiff failed to take Wellbutrin for three months, and that he had not taken it for a year. [AR at 390, 414-15.] While plaintiff claimed he stopped taking Wellbutrin because it made him feel "weird" [AR at 171], he admitted that Wellbutrin "did a fantastic job when he first took it" and that maybe he "should have kept taking" it. [AR at 415.] Furthermore, plaintiff gave inconsistent stories about Wellbutrin's side effects. Plaintiff testified at the second hearing that he heard voices after taking Wellbutrin. [AR at 429.] Yet, plaintiff earlier denied having auditory or visual hallucinations, or paranoid delusions. [AR at 200.]

The record further reveals that plaintiff stopped following his doctors' advice to exercise. [AR at 179, 236-40.] Although on May 7, 2002, plaintiff complained of muscle cramps when he attempted to exercise, he reported being able to walk a mile a day. [AR at 255.] See Fair, 885 F.2d at 603 (stating that if plaintiff could perform various physical activities despite claims of pain, the ALJ may conclude that plaintiff could work). The record does show Dr. Erwin found that plaintiff had tinea pedis[9] and gave plaintiff cortisone cream to treat it on July 22, 2002. [AR at 239.] Plaintiff then reported that he stopped walking due to "sore feet" on November 15, 2002. [AR at 247.] Dr. Compton noted, however, that the tinea pedis improved with medication. [AR at 247.] See Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999) (improvement found by the treating doctor despite plaintiff's claims of lack of improvement is a valid reason to reject plaintiff's credibility). Dr. Compton also reported that plaintiff walked to the office without difficulty on August 12, 2003. [AR at 388.] See Morgan, 169 F.3d at 600 (using staff's observations to contradict the plaintiff's denial of improvement). In addition, Dr. Compton questioned whether plaintiff sought treatment for secondary gain. [AR at 387, 390.]

Moreover, the ALJ appropriately noted that plaintiff has a "lifetime track record" of very poor earnings. [AR at 148, 279 (showing that plaintiff earned $6,329.97 in 1988; $2,861.16 in 1989;

---

[9] Tinea pedis is a fungal infection characterized by itchiness of the feet (also called athlete's foot and ringworm of the foot). Dorland's Illustrated Medical Dictionary, at 1842-43 (29th ed. 2000).

$400 in 1990; $2,100 in 1991; and $36 in 2000).] See Thomas, 278 F.3d at 959 (noting that poor work history was a specific reason for discounting plaintiff's testimony). Plaintiff testified to working "off and on" and not earning much as either a self-employed handyman or a solar energy system installer. [AR at 49, 442.] See Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) (the ALJ properly discounted plaintiff's pain testimony, in part, that was used as an excuse to explain unemployment due to slowdown in the industry).

The Court finds that the ALJ provided clear and convincing reasons for discrediting plaintiff's testimony.[10] The ALJ fully considered plaintiff's testimony, the medical records and his activities. See Reddick, 157 F.3d at 723. The substantial evidence supports the ALJ's conclusions regarding plaintiff's lack of disability. Id. Thus, the Court will not disturb the ALJ's decision. See Morgan, 169 F.3d at 600 ("Where, as here, the ALJ made specific findings justifying a decision to disbelieve an allegation..." and substantial evidence in the record supports those findings, the Court's role "is not to second-guess that decision," citing Fair, 885 F.2d at 603).

/
/
/
/
/
/
/
/
/

---

[10] The ALJ also reasoned that plaintiff's sedentary lifestyle leaves minimal time for plaintiff to exert himself sufficiently to cause neck pain. The ALJ fails to explain his basis for determining that plaintiff must exert himself to experience neck pain. See Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) ("Disability does not mean a claimant must vegetate in a dark room..."). Nevertheless, any error the ALJ may have committed in assuming that plaintiff's sedentary lifestyle is inconsistent with neck pain is harmless. See Booz v. Sec'y of Health & Human Servs., 734 F.2d 1378, 1380 (9th Cir. 1984) (applying the harmless error standard).

## VI.

## <u>CONCLUSION</u>

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for reversal, or in the alternative, remand, is **denied**; and (2) the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: July 18, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE